# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| JERALD BOITNOTT, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | Filed Electronically |
| CITY OF ST. PAUL, MINNESOTA, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Comes now Plaintiff Jerald Boitnott ("Plaintiff"), on behalf of himself and others similarly situated, and alleges as follows:

## INTRODUCTION

1. Plaintiff suffers from a mobility related disability, utilizes a wheelchair, and is a person with a disability, as that term is defined by the Americans with Disabilities Act of 1990 (ADA).

2. Plaintiff has repeatedly been impeded from accessing the benefits of services, programs, and activities provided by Defendant. Specifically, Plaintiff's attempts to use parking meters under Defendant's control have been frustrated by the inaccessible design of these parking meters.

3. Notwithstanding the fact that the ADA was enacted more than twenty-five years ago, Defendant has failed to follow the ADA's mandatory requirements that are

calculated to ensure that Defendant's parking meters are accessible to individuals with disabilities. At locations across the city of St. Paul, Minnesota, parking meters under Defendant's control lack ADA compliant operable parts.

4. The ADA and its implementing regulations require public entities to make programs accessible to people with disabilities.

5. Plaintiff alleges violations of Title II of the ADA and its implementing regulations.

6. On behalf of a class of similarly situated individuals, Plaintiff seeks a declaration that Defendant's facilities and policies as described violate federal law and an injunction requiring Defendant to bring its parking meters into compliance with the ADA.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

8. Venue in this judicial district is proper under 28 U.S.C. § 1391 because this is the judicial district in which Defendant is located, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PARTIES

9. Plaintiff Jerald Boitnott is and, at all times relevant hereto, was a resident of St. Paul, Minnesota. Plaintiff is and, at all times relevant hereto, has been legally disabled and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR § 35.101 et seq.

10. Defendant City of St. Paul, Minnesota ("Defendant") is responsible for assuring that its policies and facilities are operated in compliance with federal law. Defendant is the single city entity with responsibility to manage parking meters. Defendant is sued for actions and omissions under color of federal law.

## TITLE II OF THE ADA

11. On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

12. The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to State and local government programs, places of public accommodation, transportation, and other important areas of American life.

13. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

14. The federal regulations implementing Title II of the ADA prohibit public entities from denying qualified individuals with disabilities the opportunity to benefit from services of the entity, or from using criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. § 35.130.

15. The federal regulations also provide that a "public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id*. at § 35.130(b)(7).

16.  Defendant is a public entity under Title II of the ADA and its implementing regulations.

17.  On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title II of the ADA, which are codified at 28 CFR Part 35.101 et seq.

18.  Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR part 36) contains the ADA Standards for Accessible Design ("1991 Standards"), which were based upon the Americans with Disabilities Act Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date.[1] The 1991 Standards were made binding on Title II entities by 28 CFR § 35.151(c).

19.  In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

---

[1] The Access Board was established by section 502 of the Rehabilitation Act of 1973. 29 U.S.C.§792. The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 Federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation. Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with Federal dollars under the Architectural Barriers Act of 1968. 42 U.S.C. § 4151 et seq. The passage of the ADA expanded the Access Board's responsibilities. The ADA requires the Access Board to "issue minimum guidelines. . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities." 42 U.S.C. § 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. § 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations. The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

20.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ADA Accessibility Guidelines.

21.     The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

22.     On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

23.     On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title II of the ADA.

24.     The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in 28 CFR parts 35.151 and 28 CFR 36.401.[2]

25.     Facilities and elements constructed or altered by public entities after March 15, 2012 are required to comply with the 2010 Standards.

## THE ADA AND ACCESSIBLE PARKING METERS

26.     Since the Enactment of the ADA in 1991, public entities have been prohibited from discriminating against otherwise qualified individuals by excluding them

---

[2] Part 28 CFR 36.401 applies only to entities covered by title III called "public accommodations" (i.e., privately-owned facilities that are open to the public), and is thus not relevant to this action.

from the enjoyment of the entity's programs solely due to their disability. 42 U.S.C. § 12132.

27. Program accessibility includes accessible facilities and elements.

28. Under Section 4.2.6 of the 1991 ADAAG, operable parts could be up to 54 inches above the ground.

29. Section 308.3 of the 2010 Standards lowered the maximum height for operable parts to 48 inches.

30. Elements and Facilities, including parking meters, constructed or installed on or after March 15, 2012 are required to comply with the 2010 Standards. 28 CFR § 35.151(c)(3).

## FACTUAL ALLEGATIONS AND PLAINTIFF'S EXPERIENCE

31. Since July of 2012, Defendant has installed parking meters with operable parts that are more than 48 inches above the ground across the city. Specifically, credit card readers, coin slots, receipt returns and buttons necessary for the operation of the meter are more than 48 inches above the ground.

32. Within the applicable limitations period, Plaintiff attempted to park at an on-street metered parking space in St. Paul.

33. Plaintiff was not able to operate the parking meter due to its inaccessible design. Specifically, he was not able to reach the operable parts that were more than 48 inches above the ground.

34. On Plaintiff's behalf, an investigation of multiple parking meters located in the City of St. Paul confirmed the presence of parking meters, which are of uniform design

and which also have the same inaccessible features including credit card readers, coin slots, receipt returns and buttons necessary for the operation of the meter, that are more than 48 inches above the ground throughout the City of St. Paul.

35. Defendant's policy and practice of installing parking meters throughout the City of St. Paul after July of 2012 with credit card readers, coin slots, receipt returns and buttons necessary for the operation of the meter that are more than 48 inches above the ground is discriminatory and violates the civil rights guaranteed to Plaintiff and other disabled individuals like him under the ADA.

36. Though Plaintiff is serving as a tester in this case, Plaintiff would like to utilize Defendant's on-street metered parking spaces in St. Paul in the future; however, the lack of accessible metered parking spaces has, and does, deter Plaintiff from doing so.

## **CLASS ALLEGATIONS**

37. Plaintiff brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and the following class:

> All individuals who use wheelchairs or scooters who have attempted, or will attempt, to utilize Defendant's on-street metered parking spaces installed since July of 2012 with operable parts that are more than 48 inches above the ground.

38. <u>Numerosity</u>:  The class described above is so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

7

39. <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the class.  The claims of the Plaintiff and members of the class are based on the same legal theories and arise from the same unlawful conduct.

40. <u>Common Questions of Fact and Law</u>:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its facilities fully accessible and independently usable as above described.

41. <u>Adequacy of Representation</u>:  Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class and has no interests antagonistic to the members of the class.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

42. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

## CAUSE OF ACTION

43. The allegations contained in the previous paragraphs are incorporated by reference.

44. Defendant has discriminated against Plaintiff and the Class in that it has failed to make its parking meters fully accessible to, and independently usable by, individuals with limited mobility, in violation of Section 308.3 of the 2010 Standards and the ADA, as described above.

45. Providing accessible parking meters would neither fundamentally alter the nature of Defendant's services nor result in an undue burden to Defendant.

46. Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public entities make programs equally accessible to people with disabilities, Plaintiff invokes his statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

47. Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its programs be fully accessible to people with limited mobility is likely to recur.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the members of the class, pray for:

    a.    A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above;

    b.    A permanent injunction which directs Defendant to take all steps necessary to bring its parking meters into full compliance with the requirements set forth in the ADA and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its parking meters are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

    c.    An Order certifying the class proposed by Plaintiff, and naming Plaintiff as class representative and appointing his counsel as class counsel;

    d.    Payment of costs of suit;

    e.    Payment of reasonable attorneys' fees; and,

    f.    The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: March 5, 2019

        Respectfully submitted,

        **THRONDSET MICHENFELDER, LLC**

        */s/ Patrick W. Michenfelder*
        Patrick W. Michenfelder (#024207X)
        Chad Throndset (#0261191X)
        Cornerstone Building
        One Central Avenue West, Suite 203
        St. Michael, MN 55376
        Tel: (763) 515-6110
        Fax: (763) 226-2515
        pat@throndsetlaw.com
        chad@throndsetlaw.com

        **CARLSON LYNCH, LLP**

        R. Bruce Carlson
        Kelly K. Iverson
        Bryan A. Fox
        1133 Penn Avenue, 5th Floor
        Pittsburgh PA, 15222
        (412) 322-9243 (Tel.)
        bcarlson@carlsonlynch.com
        kiverson@carlsonlynch.com
        bfox@carlsonlynch.com
        (Pro Hac Vice Application Forthcoming)

        *Attorneys for Plaintiff*